E-FILED
Tuesday, 11 July, 2006  03:52:37 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-30002 |
| | ) | |
| GERALD LIPPOLD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on the Government's Motion In Limine Regarding Lack of Environmental Harm and Jury Nullification (d/e 24). The Government seeks to bar the Defendants from introducing any evidence or making any arguments, statements or allusions that their alleged conduct created no harm to the environment or human health. The Government further moves to bar any evidence, arguments, questioning, or allusions that the jury should disregard the law or engage in jury nullification. Defendant Gerald Lippold has filed a Response to the Government's Motion (d/e 33) (Response), in which he argues that prohibiting evidence relating to the nature of the water, the nature of the

1

water shed, the distance and potential impact on any ultimate receiving waters, and the nature of the boron water quality standard will unfairly condemn and prejudice him and that, because he may have a disagreement with the Government as to what the law requires, he requests the Court to deal with issues relating to jury nullification during trial. For the reasons set forth below, the Government's Motion is ALLOWED.

## BACKGROUND

Defendant Gerald Lippold and his co-Defendants in this case are charged with the criminal offense of violating the Clean Water Act (CWA) by knowingly discharging a pollutant into waters of the United States from a point source, without a national pollutant discharge elimination system (NPDES) permit, in violation of 33 U.S.C. §§ 1311(a) and 1319(c)(2)(A), and in violation of 18 U.S.C. § 2. Specifically, the Indictment (d/e 1) in this case alleges that the Defendants discharged a pollutant (boron ash wastewater) into an intermittent unnamed tributary of the Sangamon River.

In its Motion, the Government moves to bar any evidence showing that the Defendants' alleged conduct did not cause any harm to the environment or human health because such evidence, according to the Government, is not an element of the instant offense and would

unnecessarily confuse the jury, cause prejudice, and waste time. The Government further moves to preclude any evidence suggesting that the jury should disregard the law or engage in jury nullification. Defendant Lippold, on the other hand, argues that disallowing the introduction of evidence, such as the nature of the released water, the nature of the water shed, the potential impact on any receiving waters, and the nature of the boron water quality standard, would unfairly prejudice him. Moreover, Defendant Lippold argues that such evidence is highly relevant and critical in demonstrating whether he is in fact guilty of knowingly discharging a "pollutant" within the meaning of the CWA.

Defendant Lippold appears to suggest that if the alleged discharges did not have any hazardous effect on the environment or human health, he cannot be held liable for knowingly violating the CWA. This is because, according to Defendant Lippold, the lack of harm-related evidence demonstrates that a "pollutant", within the meaning of the Act, was not discharged. As to the jury nullification issue, Lippold asks the Court to delay ruling on this issue until the trial as he "may have a disagreement with the Government as to what the law requires." Defendant's Response to the Government's Motion In Limine at 10.

A. <u>Harm-Related Evidence</u>

As a threshold matter, in order to determine whether "harm-related" evidence is admissible at trial, courts must first ask whether the evidence in question is relevant. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." <u>Fed. R. Evid.</u> 401. In criminal cases, specifically, courts must consider the elements needed to prove the offense charged and any relevant defenses to defeat the criminal liability in order to assess whether particular evidence is relevant and thus admissible at trial. <u>United States v. Lamberty</u>, 778 F.2d 59, 60-61 (1st Cir. 1985).

For the offense charged, harm-related evidence -- <u>i.e.</u>, evidence that the Defendants' alleged conduct did or did not result in any harm to the environment or human health--is not relevant because introduction of such evidence is not required by the plain language of the statute and because it does not relate to any element of the offense.[1]

---

[1] The Court notes that Defendant Lippold appears to suggest that because he and his co-Defendants are charged with discharging a pollutant into the Sangamon River he should be allowed to show that "by the time any of this [boron ash wastewater] would reach the Sangamon River, the release would not have resulted in a violation of the relevant water quality standard for boron applicable to that river." <u>Defendant's Response to the Government's Motion In Limine</u> at 8. As noted earlier, Defendant

In enacting the Clean Water Act, Congress intended "'to restore and maintain the chemical, physical and biological integrity of the Nation's waters", by eliminating the discharge of pollutants into navigable waters of the United States. United States v. Huebner, 752 F.2d 1235, 1239 (7th Cir. 1985) (quoting 33 U.S.C. § 1251(a) (1978)). The single-count Indictment in this case alleges that the Defendants have violated Sections 1311(a) and 1319(c)(2)(A) of the CWA. Section 1311(a) provides in part that "the

---

Lippold further argues that he should be allowed to introduce evidence showing the distance and potential impact on any ultimate receiving waters, particularly the Sangamon River, and the relevant water quality standard for boron applicable to the Sangamon River. According to the Indictment, however, the relevant body of water at issue in this case is the unnamed tributary of the Sangamon River, which flows through the Curry facility, not the Sangamon River. See Indictment, ¶¶ 4-5. In order to impose criminal liability on the Defendants, the Government must therefore prove, among other things, that this unnamed tributary constitutes a "water of the United States" within the meaning of the CWA, and that the Defendants' alleged actions resulted in the discharge of pollutants into this unnamed tributary. As such, if the Government establishes that the unnamed tributary of the Sangamon River is a "water of the United States," evidence relating to the distance and potential impact on any ultimate receiving waters, and the nature of the boron water quality standard in the Sangamon River is irrelevant. However, if the unnamed tributary of the Sangamon River does not qualify as a "water of the United States," then the evidence of the boron water quality standard in the Sangamon River may be relevant. Moreover, to the extent that Defendant Lippold wishes to introduce evidence relating to the nature of water being discharged into the unnamed tributary, such evidence may be relevant to prove whether a "pollutant," within the meaning of the Act, was discharged. To the extent that Defendant Lippold wishes to introduce evidence relating to the "nature of the water shed," such evidence may be relevant to show whether the unnamed tributary is a "water of the United States" within the meaning of the Act. In the event Defendant Lippold puts forth a relevant basis to introduce such evidence, the Court will allow him to do so. However, the evidence will not be introduced for the purpose of proving no harm occurred to human health or the environment.

discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311(a).  The CWA defines in relevant part the terms "discharge of a pollutant" and "discharge of pollutants" as "any addition of any pollutant to navigable waters from any point source."  33 U.S.C. § 1362(12).  The CWA broadly defines "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."  33 U.S.C. § 1362(6).

Section 1319(c)(2)(A) provides in part that any person who "knowingly violates section 1311 . . . , or any permit condition or limitation implementing any of such sections [of the CWA] in a permit issued under section 1342 of this title" is criminally liable under the CWA.  33 U.S.C. § 1319(c)(2)(A).  When read together, criminal liability under the CWA attaches if the Government proves beyond a reasonable doubt that the defendant knowingly: (1) discharged (2) a pollutant (3) into the navigable waters of the United States (4) from a point source (5) without a valid NPDES permit.  United States v. Ahmad, 101 F.3d 386, 389 (5th Cir. 1996).

The plain language of the CWA suggests that harm-related evidence is irrelevant in proving a criminal violation of the statute. In construing the statutory language of the CWA, the Court must rely foremost on the plain language of the statute. United States v. Balint, 201 F.3d 928, 932 (7th Cir. 2000) (citing Pittway Corp. v. United States, 102 F.3d 932, 934 (7th Cir. 1996)). "If the language of the statue is clear and unambiguous, judicial inquiry is complete and that language controls absent rare and exceptional circumstances" that are inapplicable to this case. In re Perroton, 958 F.2d 889, 893 (9th Cir. 1992); see also United States v. Curtis, 988 F.2d 946, 948 (7th Cir. 1993). The CWA is clear as to the substantive elements required to establish criminal liability under the CWA, and harm-related evidence is not one of the elements. If Congress intended "harm-related" evidence to be part of the inquiry in proving a criminal violation of the CWA, Congress would have said so. Congress did not. Indeed, there is nothing in the statutory provision that provides a definition of "harm."

Furthermore, there is nothing in the statutory language which requires proof that a defendant's actions damaged the water quality or caused any harm to the environment or human health. Thus, the lack of such harm is not a proper defense to defeat criminal liability. The plain language of the

statute suggests that, as long as the Government proves beyond a reasonable doubt all of the required elements of the offense, the Defendants will be held liable regardless of the effect of those discharges on the water. Given the clear statutory language, the Court is persuaded that harm-related evidence is irrelevant.

Harm-related evidence is also irrelevant to prove the Defendant's knowledge. The Fourth and the Fifth Circuits have found that the statutory <u>mens rea</u>, "knowingly," accompanies each of the elements of the substantive offense. <u>See</u> <u>United States v. Wilson</u>, 133 F.3d 251, 262 (4th Cir. 1997); <u>Ahmad</u>, 101 F.3d at 390. The Fourth Circuit in <u>Wilson</u> explained that, in order to impose criminal liability under the CWA, the defendant does not have to know that his conduct was illegal but must "'know the *facts* that make his conduct illegal'" as to each of the elements of the substantive offense. <u>Wilson</u>, 133 F.3d at 262 (quoting <u>Staples v. United States</u>, 511 U.S. 600, 605 (1994)).

Accordingly, to prove that Defendant Lippold knowingly discharged a pollutant, the Government must prove that Defendant knew or was aware that he was discharging a substance that required an NPDES permit. Since the CWA clearly delineates what type of discharge constitutes a "pollutant"

8

within the meaning of the Act, harm-related evidence is not necessary to establish that a certain discharge is a pollutant within the meaning of the CWA. In other words, the Court need not look at the effect the discharged substance had on the environment or human health to determine whether such substance qualifies as a pollutant under the CWA. See United States v. Eidson, 108 F.3d 1336, 1343 (11th Cir. 1997) (Because the CWA broadly defines "pollutant", "an ordinary person should have been able to understand that the petroleum-based, sludge-like substance was industrial waste within the meaning of the Act", even though the substance is not specifically listed as a pollutant under the CWA); see also Committee To Save Mokelumne River v. East Bay Municipal Utility Dist., 13 F.3d 305, 309 (9th Cir. 1993) ("The [CWA] does not impose liability only where a point source discharge creates a net increase in the level of pollution. Rather, the Act categorically prohibits any discharge of a pollutant from a point source without a permit.").

Moreover, the fact that Congress listed seemingly harmless or benign substances, such as rock, sand, and cellar dirt as pollutants under the CWA, further supports a finding that harm-related evidence is not necessary to establish that a defendant knowingly discharged a pollutant.

Defendant, however, appears to suggest that since "boron ash waste water" is not included in the CWA's definition of pollutant, the Court must evaluate whether this alleged discharge caused any harm to the environment or human health in order to determine whether the alleged substance is a pollutant within the meaning the Act. Defendant Lippold's contention is unavailing because Congress intended the definition of pollutant to be broadly construed; as a result, courts have broadly construed the definition of pollutant and have accordingly held that even substances that are not specifically listed as a pollutant in the CWA constituted a pollutant within the meaning of the Act. See United States v. Hamel, 551 F.2d 107, 111 (6th Cir. 1977) (finding that petroleum products, such as gasoline, are pollutants within the meaning of the CWA even though they are not specifically listed in the definition); North Carolina Shellfish Growers Ass'n v. Holly Ridge Assocs., LLC., 278 F.Supp.2d 654, 676-77 (E.D.N.C. 2003) (finding that sediment qualifies as a pollutant under the CWA); Tungett v. Papierski, 2006 WL 51148, *2 (E.D. Tenn. 2006) (In broadly construing the definition of "pollutant" under the CWA, the district court found that sediment, soil, dirt, trees, and organic debris are pollutants within the meaning of the Act even though such substances are not specifically

included in the definition).

Additionally, the CWA defines the term "toxic pollutant"as:

> those pollutants, or combinations of pollutants, including disease-causing agents, which after discharge and upon exposure, ingestion, inhalation or assimilation into any organism, either directly from the environment or indirectly by ingestion through food chains, will, . . . cause death, disease, behavioral abnormalities, cancer, genetic mutations, physiological malfunctions (including malfunctions in reproduction) or physical deformations, in such organisms or their offspring.

33 U.S.C. § 1362(13). The fact that the CWA expressly imposes criminal liability for the knowing discharge of "any pollutant", as opposed to "toxic pollutant," reveals congressional intent to categorically prohibit knowing discharge of any pollutants without an NPDES permit, not only those pollutants that cause harmful effect on the environment and human health.

The Court further finds that allowing harm-related evidence or argument would cause confusion, prejudice, cause undue delay, and waste of time. According to Federal Rule of Evidence 403, courts may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Harm-related evidence could

11

mislead and confuse the jury by suggesting that such evidence is necessary to hold the Defendants liable for their conduct. Moreover, harm-related evidence would waste time and cause delay, especially given that harm-related evidence is neither an element of the crime nor a defense to the crime.

B.     Jury Nullification

The Government further asks the Court to prohibit any evidence suggesting that the jury should disregard the law or should engage in jury nullification. Defendant Lippold states that the Defendants in this case have no intention of instructing the jury to disregard the law. However, he asks the Court to deny the Government's request at this time with respect to the jury nullification issue and deal with this issue during the course of the trial because he "may have a disagreement with the Government as to what the law requires." Defendant's Response to the Government's Motion In Limine at 10.

It is well established that "[j]ury nullification is 'not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'" United States v. Bruce, 109 F.3d 323, 327 (7th Cir. 1997) (quoting United States v. Anderson, 716 F.2d 446, 450 (7th Cir. 1983)); see

also <u>United States v. Kerley</u>, 838 F.2d 932, 938 (7th Cir. 1988); <u>United States v. Brown</u>, 548 F.2d 204, 210 (7th Cir. 1977).  The Court, therefore, will not allow the Defendants to argue jury nullification.  The parties, however, may raise disagreement over the interpretation of the law and its application to this case through proper procedures during the course of the trial.

THEREFORE, for the reasons set forth above, the Government's Motion In Limine (d/e 24) is ALLOWED.  The Government's request to bar any evidence, arguments, questioning, statements or allusions to the fact that the Defendants' alleged conduct created no harm to human health or the environment is ALLOWED, consistent with the discussion set out in Footnote 1.  The Government's request to bar the defense from in any way suggesting that the jury not follow the law is ALLOWED.  The parties, however, may raise issues regarding the interpretation of the law and its application to this case during the course of the trial.

IT IS THEREFORE SO ORDERED.

ENTER: July 11, 2006.

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE
