E-FILED
Friday, 21 September, 2007  04:47:49 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GERALD LIPPOLD, CURRY READY MIX & )<br>BUILDERS SUPPLY, INC., CURRY ICE & COAL )<br>OF SPRINGFIELD, INC. and LIPPOLD & )<br>ARNETT, INC. )<br>)<br>Defendants. ) | Criminal Number 06-30002 |

### DEFENDANT'S MOTION TO DISMISS SUPERCEDING INDICTMENT FOR VIOLATION OF DUE PROCESS

NOW COMES Defendant Gerald Lippold, by and through his attorneys, Thomas Schanzle-Haskins and Claire A. Manning, Brown, Hay Stephens, LLP and for his Motion to Dismiss Superceding Indictment for Violation of Due Process states as follows:

Defendant Gerald Lippold moves this Court for an Order dismissing the superseding indictment. As grounds therefore, Lippold asserts that the statute upon which the charges against him are based violates the Due Process clause to the Constitution of the United States. Specifically, Lippold asserts that the Clean Water Act's prohibitions are not clearly defined, and it is therefore unconstitutionally vague.

The prosecution in this case is based on the premise that the Clean Water Act, ("CWA") 33 U.S.C. § 1251, *et seq.* prohibits the discharge of pollutants into waters of the United States without an NPDES permit. *See* Superseding Indictment, Count I (citing 33 U.S.C. §§ 1319(c)(2)(A) & 1311(a)). One of the CWA's principal provisions is 33 U.S.C. § 1311(a), which provides that "the discharge of any pollutant by any person shall be unlawful." Under the CWA, the term "pollutant" means, *inter alia*, solid waste, incinerator residue, chemical wastes,

radioactive materials, industrial waste and municipal waste. 33 U.S.C. § 1362(6). "The discharge of a pollutant" is defined broadly to include "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). Moreover, the CWA defines "navigable waters" as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). The U.S. Army Corps of Engineers' ("Corps") regulations interpret "the waters of the United States" to include "all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce"; "[a]ll other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, "wetlands," sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce including any such waters"; and "[t]ributaries of [such] waters." 40 C.F.R. § 122.2. Because of the CWA and corresponding regulations' failure to clearly define what constitutes "waters of the United States" or a "pollutant", Lippold could not know, with any reasonable certainty, if his conduct was meant to be included within the statutory proscription. The failure of a statute, particularly one which carries criminal consequences, to clearly define the conduct it proscribes and thereby ensnare innocent law-abiding individuals is the essence of constitutional vagueness, and the basis for Lippold's motion.

## I.  BACKGROUND - THE INDICTMENT

On July 12, 2007, the Lippold was charged in a one count superseding indictment with an offense relating to the Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq.* The government accused Lippold of violating the CWA by knowingly discharging a pollutant, boron and boron contaminated water, into waters of the United States without an NPDES permit in violation of 33 U.S.C. §§ 1319(c)(2)(A) & 1311(a) and 18 U.S.C. § 2. The superseding indictment charges that

Lippold caused the boron contaminated water to be discharged into two unnamed streams, which are referred to in the indictment as the "Curry Stream" and the "Joint Stream." (Indictment, ¶6) The superseding indictment further charges that these unnamed streams are "waters of the United States" that flowed into the Sangamon River, also a "water of the United States." (*Id.*)

## II. THE CLEAN WATER ACT IS VAGUE AS APPLIED TO LIPPOLD

### 1. LEGAL STANDARD

The Due Process Clause of the Fifth Amendment to the United States Constitution requires that a statute clearly delineate the conduct which it intends to prohibit. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A party may raise a vagueness challenge by arguing either that a statute is vague as applied to the facts at hand, or that a statute is void on its face. An "as applied" challenge asks whether the defendant "received fair warning of the criminality of his own conduct from the statute in question[.]" *Parker v. Levy*, 417 U.S. 733, 756 (1974). Statutes must provide "fair warning" about the conduct that will trigger liability: a penal statute is unconstitutionally vague if a person of ordinary intelligence cannot tell from reading the statute what conduct is proscribed so that he may avoid breaking the law. *Karlin v. Foust*, 188 F.3d 446, 458 (7th Cir. 1999); *Grayned*, 408 U.S. at 108-109 (by failing to clearly define prohibited conduct "[v]ague laws may trap the innocent by not providing fair warning [and may] ... impermissibly delegate[ ] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application"). As the Seventh Circuit noted in *Karlin*, the "Constitution tolerates a lesser degree of vagueness in enactments 'with criminal rather than civil penalties because the consequences of imprecision' are more severe." 188 F.3d at 458-59 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982)). "The purpose of the fair notice

3

requirement is to enable the ordinary citizen to conform his or her conduct to the law. 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'" *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999)(citing *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)).

The Due Process Clause of the Fifth Amendment to the United States Constitution similarly prohibits a federal agency from enforcing an interpretation of a regulation that is not "ascertainably certain." *General Elec. Co. v. United States EPA*, 53 F.3d 1324, 1328 (D.C.Cir.1995). A regulatory agency supplies fair notice "[i]f, by reviewing the regulations and other public statements issued by the agency, a regulated party acting in good faith would be able to identify, with 'ascertainable certainty,' the standards with which the agency expects parties to conform...." *Id.* at 1329. Statutes and regulations must provide "an explicit and ascertainable standard" to prevent "arbitrary and discriminatory" application by those charged with enforcement. *Karlin*, 188 F.3d at 459, (quoting *Grayned*, 408 U.S. at 108-109).

2. **LEGAL ANALYSIS**

   (a.) **WATERS OF THE UNITED STATES**

The Clean Water Act is unconstitutionally vague as applied to Lippold in this case. The phrase "waters of the United States" is vague and ambiguous and allows arbitrary enforcement by government agencies. Lippold, or a person of ordinary intelligence under his circumstances, would be unable to decipher the meaning of "waters of the United States" in order to determine what conduct is proscribed by the Clean Water Act. It is simply unrealistic to expect that Lippold understood, with "ascertainable certainty" no less, the CWA and the myriad regulations to provide that an unnamed stream running near the Curry facility constituted "waters of the United States." The ambiguous nature of the CWA and its regulations as to what constitutes

4

"waters of the United States" preclude even the suggestion that Lippold received a "fair warning" that his conduct may be criminal. The failure of this statute, particularly one that carries criminal consequences, to clearly define the conduct it proscribes requires the dismissal of the superceding indictment in this case.

Ordinarily, a void-for-vagueness challenge can be defeated where "judicial explication" of the statute provides sufficient clarity to provide fair notice to a defendant. *United States v. Bohonus*, 628 F.2d 1167, 1174 (9th Cir. 1980). Far from clarifying the CWA, one of the long-standing questions under the judicial decisions interpreting the CWA continues to be what constitutes a "water of the United States". In both civil and criminal cases various courts have struggled to provide a clear answer to this question. The Supreme Court's most recent pronouncement has served only to muddle the issue and create more discord and confusion concerning the true meaning of that phrase. *Rapanos v. United States*, 126 S.Ct. 2208 (2006).

In *Rapanos*, the Court narrowed the scope of the "waters of the United States" in its ruling, but there were three opinions, none of which carried a majority, which makes it difficult to ascertain the effect of the Court's ruling. Justice Scalia, writing on behalf of four Justices who constituted the plurality, determined that, for jurisdiction under the "waters of the United States" definition, the area must be a "relatively permanent, standing or flowing bod[y] of water," such as a stream, ocean, river, or lake. 126 S.Ct. at 2221. "[I]ntermittent or ephemeral" water flows, he stated, do not fall within a "commonsense understanding" of the word "waters." *Id.* at 2227. Justice Kennedy, who supplied the fifth vote for overturning the Sixth Circuit's determination of jurisdiction, said that the test was "significant nexus," and, when a wetland is adjacent to a navigable-in-fact waterway, jurisdiction can rest on a "reasonable inference of ecologic interconnection." *Id.* at 2248. When, however, the wetland is adjacent to a nonnavigable

5

tributary of that navigable-in-fact waterway, the Corps must "establish a significant nexus on a case-by case basis." *Id.* at 2249. Justice Stevens, writing in dissent for four Justices, would have upheld the Corps determination of jurisdiction based on the discretion due the Corps.

The *Rapanos* decision reflects the longstanding absence of judicial explication of the CWA. The Supreme Court's failure to reach agreement on a proper test to be applied in *Rapanos,* exemplifies the confusion surrounding the phrase "waters of the United States." Accordingly, it would be absurd to suggest that "judicial explication" of the CWA exists that might defeat a void-for-vagueness challenge. *Bohonus*, 628 F.2d at 1174. Moreover, lower courts attempting to apply *Rapanos* are not in accord as to its holding and have struggled to identify which rationale to follow. *See Simsbury-Avon Preservation Soc. V. Metacon Gun Club*, 472 F.Supp.2d 219, 225 (D. Conn. 2007) (describing split among Court of Appeals post-*Rapanos*). If the Justices of the Supreme Court and various federal judges are unable to decipher the meaning of "waters of the United States" in order to determine what conduct is proscribed by the Clean Water Act, how is Lippold, or a person of ordinary intelligence under his circumstances, to make the same determination? The judicial confusion surrounding the phrase "waters of the United States" provides support for and serves only to further the argument advanced in this motion - that Lippold could not know, with any reasonable certainty, if his conduct was meant to be included within the CWA's statutory proscription. On this point, all of the Justices *Rapanos* were able to agree; the phrase "waters of the United States" is "ambiguous." *Rapanos*, 126 S.Ct. at 2232, 2262.

The phrase "waters of the United States" is also vague because it allows the arbitrary enforcement by government agencies and the U.S. Attorney's Office. *Karlin*, 188 F.3d at 459. While the United States Environmental Protection Agency has issued guidance (not promulgated

6

regulations) in an attempt to interpret *Rapanos*, that guidance itself is broader and more far reaching than called for in the Supreme Court's decision and, as the expert witnesses disclosures in this case attest, the federal agency guidance is capable of various interpretations. Thus, the ambiguous and vague nature of the federal guidance and regulations under the CWA essentially allows federal agencies and the U.S. Attorney's Office who represents them to define what constitutes "waters of the United States" on an *ad hoc* basis. This is precisely the type of conduct and unfettered agency discretion the void-for-vagueness doctrine is designed to prevent. *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972) (by failing to clearly define prohibited conduct "[v]ague laws may trap the innocent by not providing fair warning [and may] ... impermissibly delegate[ ] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application").

A recent report from the General Accounting Office (GAO) confirms the difficulty caused by these vague regulations in determining what constitutes a "water of the United States" under the CWA. The report documents that the Corps' local districts "differ in how they interpret and apply the federal regulations when determining what wetlands and other waters fall within the [Clean Water Act]'s jurisdiction." U.S. General Accounting Office, Waters and Wetlands: Corps of Engineers Needs to Evaluate Its District Office Practices in Determining Jurisdiction 3 (Feb. 2004), available at www.gao.gov/new.items/d04297.pdf (last visited September 18, 2007)(GAO Report). But worse than the inter-district disagreements are the intra-district inconsistencies: the GAO report concludes that even Corps staff working in the same office cannot agree on the scope of the CWA and that "three different district staff" would likely

7

make "three different assessments" as to whether a particular water feature is subject to the Clean Water Act. GAO Report at 22.

Given the Corps' difficulty in interpreting the CWA, how can one expect Lippold to identify with "ascertainable certainty" the standards with which he must comply? *General Elec. Co. v. United States EPA*, 53 F.3d at 1328 (D.C.Cir. 1995). The regulations and statutory language simply fail to provide an explicit or ascertainable standard that rises to a criminal proscription. Lippold should not be subjected to criminal prosecution because he would have to guess at the meaning of the Clean Water Act or because his interpretation may differ with the government. Because of the CWA and corresponding regulations' failure to clearly define what constitutes "waters of the United States", Lippold could not know, with any reasonable certainty, if his conduct was meant to be included within the statutory proscription. The statute and regulations are therefore unconstitutionally vague and void as applied to Lippold.

(b.) **POLLUTANT**

The Clean Water Act is also unconstitutionally vague as applied to Lippold in this case because the term "pollutant" is vague and ambiguous and allows arbitrary enforcement by government agencies. The Superceding Indictment itself fails to specifically delineate what type of pollutant Defendant Lippold allegedly unlawfully discharged. The Government has not charged Lippold with discharging fly ash waste and bottom ash waste, which the Government identifies as "Industrial Waste", into waters of the United States. (Indictment, ¶11). Rather, the Government charged Lippold with discharging rainwater into waters of the United States. The expert's reports filed in this case acknowledge that boron is a naturally occurring element. Because the element Boron had "leached out of the industrial waste into the rain water", the Government characterizes the boron and "boron contaminated water" as "pollutants" under the

8

CWA. (*Id.* at ¶25). The boron and boron contaminated water cannot be "solid waste, incinerator waste, chemical wastes, industrial waste and municipal waste", which are all included in the definition of "pollutant" under §1362(6). (*Id.* at ¶26).

The problem here is that Lippold, or a person of ordinary intelligence under his circumstances, would be unable to decipher the meaning of "pollutant" in order to determine what conduct is proscribed by the Clean Water Act. (*Id.* at ¶25). In this case, there are serious questions as to the applicability of that definition, given the nature of the alleged pollutant: storm water and groundwater in an excavation pit. The pit water contained boron, an element that had leached from coal fly ash that had been placed in the pit. Pursuant to the facility's NPDES stormwater permit, the Illinois Environmental Protection Agency allowed the facility to daily spread this very same water, with the very same concentration of boron, across a thirteen acre parking lot for dust control. Yet, Mr. Lippold now stands accused of a federal crime: allowing this "pollutant" to be discharged to a water of the United States without an NPDES point source discharge permit.

The federal government has consistently declined to develop a water quality or safe drinking water regulatory standard for boron or designate it a priority pollutant. See National Recommended Water Quality Criteria USEPA Office of Water, Office of Science and Technology 2006 (4304T) (only recommended criterion for boron is that which was suggested in 1986: 750mg/L for purposes of crop irrigation, see "Gold Book" p. 60 - 61) ; Regulatory Determinations Support Document for Selected Contaminants from the Second Drinking Water Contaminant Candidates List (CCL2), Part II CCL Contaminants Undergoing Regulatory Determination, Chapter 3: Boron, EPA 815-D-06-007. While Illinois has a long-standing boron water quality standard (1mg/L), the standard was developed in the 1970's, well before the

current federal-state CWA paradigm, and is honored more in its exception than in its application. See Illinois Pollution Control Board cases: *In the Matter of: Petition of Illinois Power Company (Baldwin Power Plan) for Adjusted Standard from 35 Ill. Adm. Code 302.208 and 35 Ill. Adm. Code 304.105,* AS 96-1 (1995); *In the Matter of: Petition of Illinois Power Company (Duck Creek Station) for Adjusted Standard from 35 Ill. Adm. Code 302.208 and 35 Ill. Adm. Code 304.105,* AS 96-8; *In the Matter of: Petition of the City of Springfield, Office of Public Utilities for an Adjusted Standard from 35 Ill. Adm. Code 302.208(e),* AS 94-9 (1994). Importantly, while Illinois has long been designated a federally delegated agency for purposes of CWA implementation, there is no evidence that the federal government has ever explicitly examined or technically reviewed Illinois' archaic 1972 boron standard.

Yet, applying this standard to the pit water (as opposed an actual flowing water body, for which a water quality standard is developed), the indictment blesses the standard and allows it to be the standard relevant to the government's theory of "pollutant": "This caused the accumulated water to be contaminated with a level of boron that was approximately 13 times greater than the concentration that IEPA would allow for purposes of water quality." (Indictment, ¶13). Neither the federal government nor Illinois' neighboring states have water quality standards for boron (see expert witness disclosure of Rapps; p. 5). If the Curry facility were in Indiana, where boron is not regulated with a water quality standard, Lippold's alleged actions would not rise to the level of a federal crime. The government cannot rely on the non-uniform Illinois state standard to make boron a "pollutant" and its discharge a federal crime.

Accordingly, the CWA and corresponding regulations' failure to clearly define what constitutes a "pollutant", precluded Lippold from knowing, with any reasonable certainty,

10

whether his conduct was meant to be included within the statutory proscription. The statute and regulations are therefore unconstitutionally vague and void as applied to Lippold.

## III. CONCLUSION

In addition to the uncertainty of the "pollutant" definition, in the context of this case Lippold is a victim of unclear, confusing and inconsistent agency interpretations of CWA regulatory conceptual frameworks (e.g., it is acceptable to spread the boron water over thirteen acres of parking lot under the guise of the facility's NPDES stormwater permit, but it is a federal crime to allow that very same water to enter a ditch through a conveyance without an NPDES discharge permit). In the civil context, such lack of clarity in agency expectations and interpretations has served to defeat claims that a charged party was on "fair notice" of the agency's expectations. *General Elec. Co. v. United States EPA*, 53 F.3d 1324, 1328-29 (D.C.Cir. 1995).

Here, Defendant is being prosecuted criminally – in federal court, and he faces incarceration. Moreover, environmental harm is not a consideration. Accordingly, there are compelling constitutional reasons to ensure that (a) the alleged crime is within the jurisdiction of the federal court and (b) the statutory and regulatory definitions, as applied, are of sufficient clarity to apprise the defendant of the consequences of his purported actions (that his purported conduct is criminal). Neither is the case here.

**WHEREFORE** Defendant Gerald Lippold respectfully requests that this Court enter an Order granting this motion and dismissing with prejudice the superseding indictment filed against him on July 12, 2007.

Respectfully submitted,
**GERALD LIPPOLD**, Defendant

By:
s/Claire A. Manning
Claire A. Manning, Registration No. 3124724
Tom Schanzle-Haskins, Registration No. 02473534
Attorneys for the Defendant
Brown, Hay & Stephens, LLP
205 S. Fifth Street, Suite 700
P.O. Box 2459
Springfield, IL 62705-2459
Telephone: (217) 544-8491
Facsimile: (217) 544-9609
cmanning@bhslaw.com
ts-h@bhslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Patrick J. Chesley
U.S. Attorney
318 S. Sixth Street
Springfield, IL 62701-1806
pat.chesley@usdoj.gov.

Charles J. Northrup
Todd M. Turner
Sorling, Northrup, Hanna, Cullen & Cochran
800 Illinois Building
607 E. Adams Street
Springfield, IL 62705
cnorthrup@sorlinglaw.com

Jon G. Noll
Noll Law Office
802 S. Second Street
Springfield, IL 62704
noll@noll-law.com

s/ Claire A. Manning
Registration No. 3124724
Attorney for the Defendant
Brown, Hay & Stephens, LLP
205 S. Fifth Street, Suite 700
P.O. Box 2459
Springfield, IL 62705-2459
Telephone: (217) 544-8491
Facsimile: (217) 544-9609
cmanning@bhslaw.com